UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>CURTIS PETERSON,<br><br>　　Defendant. | Case No. 1:17-cr-00232-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Curtis Peterson's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 40. The Government has filed an opposition to Peterson's Motion. Dkt. 47. Peterson filed a reply. Dkt 51. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

Curtis Peterson pled guilty to one count of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). Dkt. 35. On July 13, 2018, the Court sentenced Peterson

to 87 months of incarceration followed by five years of supervised release. *Id*. Peterson, a three-time convicted felon, sold numerous firearms and repeatedly distributed methamphetamine. Dkt. 27. Peterson is currently incarcerated at Herlong Federal Correctional Institution ("FCI Herlong") and has served less than half of his sentence. Dkt 47-1.

On April 15, 2020, Peterson submitted a request for Compassionate Release/Reduction in Sentence to the Warden at FCI Herlong. Dkt. 40-1. That request was denied on April 16, 2020. *Id*. Peterson filed a Motion for Compassionate Release with the Court on March 16, 2021. Dkt. 40. He cited the COVID-19 pandemic in conjunction with underlying health problems as the reason justifying his release. *Id*. The Government opposed Peterson's Motion (Dkt. 47) and Peterson replied on April 25, 2021. Dkt. 51.

### III. LEGAL STANDARD

Peterson seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Peterson submitted a request for Compassionate Release to the Warden on April 15, 2020, and his request was denied the next day. Dkt. 40-1. Because Peterson's present motion was filed after his request to the Warden was denied, the Court finds that he has exhausted his administrative remedies.

---

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.")).

MEMORANDUM DECISION AND ORDER - 3

### B. Extraordinary and Compelling Reasons

Having determined Peterson has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Peterson's sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Peterson bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). Because this is no longer the law with the FSA, which allows defendants to seek relief directly from the court, this "leaves district courts in a conundrum." *Id*. (explaining that Congress now allows district courts to grant petitions "consistent with the applicable policy

statements" from the Sentencing Commission, although the Sentencing Commission "has not made the policy statements for the old regime applicable to the new one").

A growing number of district courts have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant compassionate release." *Rodriguez*, 411 F. Supp. 3d at 682 (collecting cases). However, other courts have concluded "a judge may not stray beyond the specific instances listed in [U.S.S.G. § 1B1.13]." *Mondaca*, 2020 WL 1029024, at *3 (citations omitted); *see also United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (stating U.S.S.G. § 1B1.13's descriptions of extraordinary and compelling reasons "remain current, even if references to the identity of the moving party are not").

The Court need not decide the issue, however, because Peterson suggests one of the specific scenarios set out in the Sentencing Commission's policy statement applies in this case. *Brown*, 411 F. Supp. 3d at 451 (district courts "still must act in harmony with any sentencing policy guidelines that remain applicable and the § 3553(a) factors").[3] Peterson argues that the threat of contracting COVID-19, in conjunction with an elevated risk of severe illness due to his chronic obstructive pulmonary disease ("COPD"), asthma, high cholesterol, high blood pressure, and obesity, constitutes an extraordinary and compelling

---

[3] Peterson argues that the guidelines in 1B1.13 should not apply at all in this case because of the conflicting caselaw on the issue. The Court understands and appreciates the argument. However, the Ninth Circuit has not definitively ruled on the matter. Additionally, the Court must utilize some standard in evaluating Peterson's arguments. Thus, while the Court will not *exclusively* rely on the policy guidelines, it uses them as a framework for its discussion today.

MEMORANDUM DECISION AND ORDER - 5

circumstance necessitating compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[4] Dkt. 40.[5]

As an initial matter, Peterson's medical conditions could place him at a higher risk of contracting a severe form of COVID-19. The CDC lists COPD, asthma, high blood pressure, and obesity as underlying health conditions which might place individuals at an increased risk of severe illness from COVID-19.[6] However, the Government argues, and

---

[4] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[5] Peterson indicates that his request could be brought under both subsections (A) and (D). Again, it appears Peterson wants to utilize subsection (D)—the "catch-all" provision—because he is afraid the Court will not consider his health conditions and/or will not evaluate whether his situation is extraordinary or compelling in light of the discrepancies regarding the utilization of 1B1.13's guidelines. Regardless of how the matter is framed, and under any standard, the Court *will* take into account all the arguments presented and determine for itself whether Peterson has met his burden.

[6] *CDC Updates, Expands List Of People At Risk Of Severe COVID-19 Illness, Center for Disease Control and Prevention* (June 25, 2020), https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html.

MEMORANDUM DECISION AND ORDER - 6

the Court agrees, that Peterson's vaccination mitigates his risk of becoming severely ill from COVID-19 to such an extent that the threat of contracting COVID-19 does not present an extraordinary and compelling reason to grant compassionate release. Dkt. 47. Many courts have found that a vaccinated prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions. *See United States v. Henderson*, No. 14-cr-00307-BAS-1, Dkt. No.74 (S.D. Cal. Jan. 27, 2021) (defendant with asthma and obesity failed to show "extraordinary and compelling reasons" where vaccination "largely dissipated" her chances of COVID-19 reinfection or relapse); *United States v. Ballenger*, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release."); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his [Pfizer COVID-19] vaccination significantly mitigates the risk that he will contract COVID-19," and, therefore, his medical conditions did not rise to the level of "extraordinary and compelling reasons.")

Additionally, there is no evidence to suggest that Peterson would be at less risk to contract the virus if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is

little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"); *United States v. Shabudia*, 445 F. Supp. 3d 212, 215 (N.D. Cal. 2020) (denying motion for elderly inmate with high cholesterol; observing that "while the Court acknowledges [defendant's] worries about the spread of COVID-19 in prisons, the facility in which [defendant] is housed currently has no confirmed cases of COVID-19"); *see also United States v. Wright*, 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (denying motion for inmate with diabetes, noting, it appears "the BOP has been successful at limiting the spread of the virus within the MCC . . . despite the close proximity of inmates, the BOP is able to impose restrictions on visitors and restrictions on internal movements that are more difficult to impose outside prison walls. There is no reason to believe at this juncture that [defendant] would be at any less of a risk from contracting COVID-19 if he were to be released."). Indeed, as of May 21, 2021, Herlong FCI has reported zero active cases among inmates or staff.[7]

      Peterson also argues that, despite his vaccination, the risk of COVID-19 remains

---

[7] Federal Bureau of Prisons, COVID-19 Information, available at https://www.bop.gov/coronavirus/ (last accessed May 21, 2021).

high because BOP staff have proven reticent to receive the COVID-19 vaccine. Dkt 51. This argument is unavailing. FCI Herlong currently has no reported active cases of COVID-19 among staff members, and Peterson's vaccine should provide robust protection should an outbreak occur—even among staff.[8]

Finally, the Government argues that the 18 U.S.C. § 3553(a) factors weigh against Peterson's release.[9] Dkt. 47. The Court agrees. Peterson repeatedly trafficked in firearms and methamphetamine as a two-time convicted felon, demonstrating disrespect for the law and a threat to public safety. Furthermore, he has served less than half of his sentence, and releasing him now would not "afford adequate deterrence to criminal conduct."

In sum, the Court finds that Peterson has exhausted his administrative remedies. However, Peterson has failed to demonstrate an "extraordinary and compelling reason" for his release, and has failed to show that such a reduction in his sentence is consistent with

---

[8] *Id*.

[9] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

MEMORANDUM DECISION AND ORDER - 9

the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Peterson at this time. Accordingly, the Court must DENY Peterson's motion.

## V. ORDER

The Court HEREBY ORDERS:

1. Peterson's Motion for Compassionate Release (Dkt. 40) is **DENIED**.

DATED: June 11, 2021

David C. Nye  
Chief U.S. District Court Judge